1  SANDRA R. BROWN
   Acting United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   JOHN J. LULEJIAN (Cal. Bar No. 186783)
4  Assistant United States Attorney
       1200 United States Courthouse
5      312 North Spring Street
       Los Angeles, California 90012
6      Telephone:  (213) 894-0721
       Facsimile:  (213) 894-0141
7      E-mail:     John.Lulejian@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA

9                                          CV17- 8797 FMO (PJW)

10              UNITED STATES DISTRICT COURT

11        FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  IN THE MATTER OF THE          No. MJ 17 - 3023
    EXTRADITION OF
13                                UNITED STATES' EXTRADITION
    BANI SOLORZANO                MEMORANDUM
14
    A Fugitive from the          Hearing Date: January 23, 2018
15  Government of Canada.         Hearing Time: 2:00 p.m.
                                  Location:     Courtroom of the
16                                              Honorable Patrick J.
                                                Walsh
17

18       Plaintiff United States of America, by and through its counsel

19  of record, the United States Attorney for the Central District of

20  California, hereby submits its Extradition Memorandum.

21       The Memorandum is based on all of the documents and exhibits

22  previously lodged and filed under seal and publicly with the Court

23  (in original and redacted forms), which were submitted by the

24  \\

25  \\

26  \\

27  \\

28  \\

1  Government of Canada in support of its request for extradition in

2  support of extradition in this matter.

3

4  Dated: November 29, 2017            Respectfully submitted,

5                                      SANDRA R. BROWN
                                       Acting United States Attorney
6
                                       LAWRENCE S. MIDDLETON
7                                      Assistant United States Attorney
                                       Chief, Criminal Division
8

9                                      /s John J. Lulejian
                                       ─────────────────────────────
10                                     JOHN J. LULEJIAN
                                       Assistant United States Attorney
11
                                       Attorneys for Plaintiff
12                                     UNITED STATES OF AMERICA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES ....................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ......................... 1

I.    INTRODUCTION ......................................... 1

II.   STATEMENT OF FACTS ................................... 2

      A.    Factual Background ............................. 3

            1.    Interview of Victim's Mother ............ 3

            2.    Interview of the Victim ................. 4

            3.    Interview of the Victim's Brother ....... 4

            4.    Medical Examination of the Victim ....... 5

            5.    The Fugitive's E-mail ................... 5

            6.    Identification of the Fugitive .......... 6

III. LEGAL FRAMEWORK AND ARGUMENT .......................... 6

      A.    Applicable Law Concerning Extradition Hearings .......... 6

            1.    Sui Generis Nature of Extradition Proceedings ....... 6

            2.    General Standards and the Elements of Extradition ... 7

            3.    Probable Cause Determination ............ 9

            4.    Rules of Criminal Procedure and Evidence Do Not Apply ........................................ 10

            5.    Limitations on Fugitive's Evidence ...... 11

            6.    The Rule of Non-Inquiry ................. 12

      B.    ELEMENTS FOR EXTRADITION ARE MET ............... 13

            1.    There is Subject Matter Jurisdiction .... 14

            2.    There is Personal Jurisdiction .......... 14

            3.    Extradition Treaty is in Force .......... 15

            4.    The Fugitive is Sought for Offenses Covered by the Treaty ................................. 15

i

1

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                                PAGE

5.   There Is Probable Cause ........................... 18

a.   Summary of Facts Supporting Probable Cause .... 19

b.   Elements of Offense Are Met ................... 20

(A)   Sexual Interference ..................... 20

(B)   Invitation of Sexual Touching ........... 20

(C)   Sexual Assault .......................... 21

c.   The Individual Appearing Before the Court is the Fugitive ................................. 22

IV.   CONCLUSION ............................................. 22

**TABLE OF AUTHORITIES**

CASES                                                              PAGES

Afanasjev v. Hurlburt,

    418 F.3d 1159 (11th Cir. 2005) ..................... 6, 10, 19

Arnbjornsdottir-Mendler v. United States,

    721 F.2d 679 (9thCir. 1983) ............................. 13

Austin v. Healey,

    5 F.3d 598 (2d Cir. 1993) ............................... 14

Barapind v. Enomoto,

    400 F.3d 744 (9th Cir. 2005) (en banc) ................ 11, 12

Benson v. McMahon,

    127 U.S. 457 (1888) ................................... 6, 18

Bingham v. Bradley,

    241 U.S. 511 (1916) ................................... 9, 10

Bovio v. United States,

    989 F.2d 255 (7th Cir. 1993) ............................ 12

Charlton v. Kelly,

    229 U.S. 447 (1913) ................................... 7, 12

Collins v. Loisel,

    259 U.S. 309 (1922) .................... 9, 10, 12, 16, 18

Cucuzzella v. Keliikoa,

    638 F.2d 105 (9th Cir. 1981) ........................... 9, 16

DeSilva v. DiLeonardi,

    125 F.3d 1110 (7th Cir. 1997) ........................... 12

Eain v. Wilkes,

    641 F.2d 504 (7th Cir. 1981) ............................ 11

Emami v. U.S. Dist. Court for N. Dist.,

    834 F.2d 1444 (9th Cir. 1987) ......................... 10, 11

<u>TABLE OF AUTHORITIES (CONTINUED)</u>

<u>PAGES</u>

<u>Factor v. Laubenheimer</u>,
    290 U.S. 276 (1933) ..................................... 8, 9

<u>Fernandez v. Phillips</u>,
    268 U.S. 311 (1925) ..................................... 9, 19

<u>Gallo-Chamorro v. United States</u>,
    233 F.3d 1298 (11th Cir. 2000) ........................... 16

<u>Glucksman v. Henkel</u>,
    221 U.S. 508 (1911) ................................. 10, 13

<u>Greci v. Birknes</u>,
    527 F.2d 956 (1st Cir. 1976) ............................. 10

<u>Grin v. Shine</u>,
    187 U.S. 181 (1902) ...................................... 16

<u>Hooker v. Klein</u>,
    573 F.2d 1360 (9th Cir. 1978) ........................ 11, 12

<u>Hoxha v. Levi</u>,
    465 F.3d 554 (3d Cir. 2006) .............................. 17

<u>In re Christensen</u>,
    478 F.2d 1392 (2d Cir. 1973) ............................. 11

<u>In re Extradition of Gonzalez</u>,
    217 F. Supp. 717 (S.D.N.Y. 1963) ......................... 13

<u>In re Extradition of Mainero</u>
    990 F. Supp. 1208(S.D. Cal. 1997) ........................ 14

<u>In re Extradition of McMullen</u>,
    989 F.2d 603 (2d Cir. 1993) .............................. 10

<u>In re Lincoln</u>,
    228 F. 70 (E.D.N.Y. 1915) ................................ 13

iv

| | |
|---|---|
| 1 | **TABLE OF AUTHORITIES (CONTINUED)** |
| 2 | PAGES |

3  In re Ryan,
4      360 F. Supp. 270 (E.D.N.Y. 1973) ........................... 11
5  Jhirad v. Ferrandina,
6      536 F.2d 478 (2d Cir. 1976) ............................... 6
7  Jimenez v. Aristeguieta,
8      311 F.2d 547 (5th Cir. 1962) ............................. 14
9  Kelly v. Griffin,
10     241 U.S. 6 (1916) ........................................ 15
11 Koskotas v. Roche,
12     931 F.2d 169 (1st Cir. 1991) ............................. 10
13 Lo Duca v. United States,
14     93 F.3d 1100 (2d Cir. 1996) ............................... 7
15 Lopez-Smith v. Hood,
16     121 F.3d 1322 (9th Cir. 1997) ............................ 13
17 Mainero v. Gregg,
18     164 F.3d 1199 (9th Cir. 1999) ........................ 10, 11
19 Manta v. Chertoff,
20     518 F.3d 1134 (9th Cir. 2008) .............................8
21 Martin v. Warden,
22     993 F.2d 824 (11th Cir. 1993) ...................... 6, 7, 10
23 McElvy v. Civiletti,
24     523 F. Supp. 42 (S.D. Fla. 1981) .........................16
25 Melia v. United States,
26     667 F.2d 300 (2d Cir. 1981) .............................. 10
27 Messina v. United States,
28     728 F.2d 77 (2d Cir. 1984) ............................... 10

1                      <u>TABLE OF AUTHORITIES (CONTINUED)</u>

2                                                              <u>PAGES</u>

3    <u>Mirchandani v. United States</u>,

4          836 F.2d 1223 (9th Cir. 1988) ........................... 9, 18

5    <u>Neely v. Henkel</u>,

6          180 U.S. 109 (1901) .................................. 6, 7

7    <u>Ordinola v. Hackman</u>,

8          478 F.3d 588 (4th Cir. 2007) ............................ 8

9    <u>Ornelas v. Ruiz</u>,

10         161 U.S. 502 (1896) .................................. 9

11   <u>Prasoprat v. Benov</u>,

12         421 F.3d 1009 (9th Cir. 2005) ..................... 7, 10, 13

13   <u>Quinn v. Robinson</u>,

14         783 F.2d 776 (9th Cir. 1986) ................. 8, 9, 10, 12

15   <u>Romeo v. Roache</u>,

16         820 F.2d 540 (1st Cir. 1987) ........................... 10

17   <u>Sabatier v. Dabrowski</u>,

18         586 F.2d 866 (1st Cir. 1978) ........................... 10

19   <u>Shapiro v. Ferrandina</u>,

20         478 F.2d 894 (2d Cir. 1973) .................... 7, 8, 12

21   <u>Sidali v. INS</u>,

22         107 F.3d 191 (3d Cir. 1997) ........................... 19

23   <u>Simmons v. Braun</u>,

24         627 F.2d 635 (2d Cir. 1980) ........................... 10

25   <u>Then v. Melendez</u>,

26         92 F.3d 851 (9th Cir. 1996) ........................... 15

27   <u>United States ex rel. Sakaguchi v. Kaulukukui</u>,

28         520 F.2d 726 (9th Cir. 1975) ........................... 9

**<u>TABLE OF AUTHORITIES (CONTINUED)</u>**

<u>PAGES</u>

<u>United States v. Lui Kin-Hong</u>,

   110 F.3d 103 (1st Cir. 1997) ............................. 13

<u>United States v. Pena-Bencosme</u>,

   Case No. 05-M-1518, 2007 WL 3231978

   (E.D.N.Y. Oct. 30, 2007) ................................ 12

<u>United States v. Saccoccia</u>,

   58 F.3d 754, 766 (1st Cir. 1995) ........................ 16

<u>United States v. Wiebe</u>,

   733 F.2d 549 (8th Cir. 1984) ........................... 8, 9

<u>Valencia v. Limbs</u>,

   655 F.2d 195 (9th Cir. 1981) ............................. 9

<u>Ward v. Rutherford</u>,

   921 F.2d 286 (D.C. Cir. 1990) ........................... 14

<u>Yapp v. Reno</u>,

   26 F.3d 1562 (11th Cir. 1994) ........................... 10

<u>Zanazanian v. United States</u>,

   729 F.2d 624 (9th Cir. 1984) ............................. 8


<u>STATUTES</u>

18 U.S.C. § 2241(c) ................................... 17, 18

18 U.S.C. § 2244(a)(5) .................................... 17

18 U.S.C. § 3181 .......................................... 15

18 U.S.C. § 3184 ..................................... *passim*

18 U.S.C. § 3186 .......................................... 13

18 U.S.C. § 3190 .......................................... 11

Cal. Penal § 261(a) ....................................... 17

## TABLE OF AUTHORITIES (CONTINUED)

PAGES

Cal. Penal § 264 ............................................... 17

Cal. Penal § 264(c)(1) ......................................... 18

Cal. Penal § 269 ............................................... 18

Cal. Penal § 269(b) ............................................ 18

Cal. Penal § 288(a) ............................................ 17


TREATIES

Treaty on Extradition Between the United States
     of America and Canada, U.S.-Can., Dec. 3, 1971,
     27 U.S.T. 983 ............................................. 1

Protocol Amending the Extradition Treaty with Canada,
     U.S.-Can., Jan. 11, 1988, S. Treaty Doc.
     No. 101-17 (1990) ......................................... 1

Second Protocol Amending the Extradition Treaty with
     Canada, U.S.-Can., Jan. 12, 2001, S. Treaty Doc.
     No. 107-11 (2002) ......................................... 1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2    **I.    INTRODUCTION**

3              On October 27, 2017, the United States Marshals Service arrested

4    fugitive BANI SOLORZANO ("the fugitive"), in this district on an

5    arrest warrant issued by United States Magistrate Judge Jean P.

6    Rosenbluth.  (See Docket No. 1.)  The arrest warrant was issued

7    pursuant to a complaint filed by the United States in this District

8    to initiate an extradition proceeding based on the request of the

9    Government of Canada that the fugitive be extradited to stand trial

10   for the crimes of (1) Sexual Interference, in violation of section

11   151 of the Criminal Code of Canada ("CCC"); (2) Invitation to Sexual

12   Touching, in violation of section 152 of the CCC; and (3) Sexual

13   Assault, in violation of section 271 of the CCC.  (See Docket No. 1.)

14   The fugitive's initial court appearance was on October 27, 2017.  At

15   the fugitive's request, the Court scheduled a detention hearing for

16   November 1, 2017, and rescheduled that hearing for November 6, 2017,

17   where the Court held that there were no special circumstances that

18   warranted the fugitive's release, and ordered the fugitive's

19   continued detention.  (See Docket No. 12.)

20             Canada made its formal request for the fugitive's extradition

21   under the authority of the Treaty on Extradition Between the United

22   States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983;

23   Protocol Amending the Extradition Treaty with Canada, U.S.-Can.,

24   Jan. 11, 1988, S. Treaty Doc. No. 101-17 (1990); and Second Protocol

25   Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12,

26   2001, S. Treaty Doc. No. 107-11 (2002) (collectively "the Treaty").

27   A copy of the Treaty and the formal extradition request is annexed to

28   the Declaration of Katherine C. Fennell ("Fennell Decl."), which is

attached as Exhibit 1 to the Government's Complaint for Arrest Warrant and Extradition, filed on October 26, 2016 (Docket No. 1).[1] The United States acts in this proceeding in accordance with its treaty obligations to the Canadian government.

By statute, the judicial officer handling the extradition proceeding is required to hold a hearing to consider the evidence of criminality presented by Canada and to determine whether it is "sufficient to sustain the charge under the provisions of the proper treaty or convention."  18 U.S.C. § 3184.  If the judicial officer finds the fugitive extraditable, he or she certifies that finding to the Secretary of State, who decides whether to surrender the fugitive.  Because the law regarding extradition is sui generis, differing substantially from ordinary criminal or civil proceedings, the United States offers this memorandum as a guide to the nature of the extradition hearing and the application of the Treaty to the facts of this case.

## II.  STATEMENT OF FACTS

The formal request for extradition summarizes the case's procedural history, the law supporting the extradition request, witness statements, and other evidence.  It also contains the texts

---

[1]  All original exhibits cited to or otherwise referenced herein were previously filed as attachments to the Government's Complaint for Arrest Warrant and Extradition) (Docket No. 1), which was filed on October 26, 2016.  A redacted copy and an amended redacted copy of these documents were filed on November 7, 2017 (Docket No. 13) and November 28, 2017 (Docket No. 21).  As a result, they are not attached to this memorandum but instead are referenced by docket and CM/ECF page number.  Unless otherwise noted, the docket shall be the one associated with the above-captioned case.  The instant request for extradition is based upon all of the documents submitted by Canadian authorities, which have been filed with the Court.

2

of the applicable Canadian law; a statement regarding the applicable
statute of limitations; a Warrant for Arrest from Canada, issued on
March 1, 2012, by Justice of the Peace Ian Zaharko in Edmonton,
Alberta, Canada; the charging document; a summary of the statements
of the victim, other witness, a medical expert, and other documents
related to the proceedings, from which the following facts reasonably
may be derived:

### A.   Factual Background

#### 1.   Interview of Victim's Mother

The victim's mother reported to the police on March 16, 2011,
that in June 2010, the victim, who was then 11 years old, and her
family began sharing a residence with her aunt's family in Edmonton,
Alberta.  (See Docket No. 21 at 71.)  The fugitive, who was 22-years
old at the time, was a member of the household.  (See id.)

On March 16, 2011, the victim's mother reported to the police
that in October 2010, she and her sister (the victim's aunt)
discovered that the fugitive had been sexually assaulting the victim
during the previous months.  (See id.)  The victim's mother learned
of the assaults when the victim's aunt discovered her niece (the
victim) trying to wash bloodstains from her underwear.  (See id.)
When her the victim's mother confronted her about the underwear, the
victim disclosed that the fugitive had digitally penetrated her
vagina, that she had masturbated his penis, and that there had been
one incident of vaginal intercourse.  (See id. at 71-72.)  That same
day, the victim's mother observed a bloodstain on the fugitive's
bedspread.  (See id. at 72.)

On that same day in October 2010, the victim's mother and aunt
confronted the fugitive about sexual activity between him and the

3

1  victim.   (See id.)   The fugitive replied, "I messed up again."   (See

2  id.)

3        The victim's mother delayed reporting the assaults because she

4  was afraid that Child Services would take away her children.   (See

5  id.)   When she learned that this was not the case, the victim's

6  mother reported the incidents to the police.   (See id.)

7              2.   Interview of the Victim

8        In a video- and audio-recorded interview conducted on March 23,

9  2011, the victim reported that on four or five occasions the fugitive

10  took the victim's hand, placed it on his penis and then had her move

11  her hand up and down; he placed his finger in her vagina "a lot" of

12  times; and on one occasion he put his penis in her vagina.   (See id.)

13  The victim was uncertain about the exact dates but said the incidents

14  took place while her family was living with the fugitive's family, in

15  a bedroom that the fugitive shared with his two brothers and the

16  victim's two brothers.   (See id.)

17        The incidents took place when the victim came into the bedroom

18  to play games on the fugitive's iPhone, as the fugitive played video

19  games on the PlayStation kept in the room.   (See id.)   The fugitive

20  would then come onto the bed, ask what she was doing, and touch her

21  sexually.   (See id.)

22              3.   Interview of the Victim's Brother

23        In a video- and audio-recorded interview conducted on March 29,

24  2011, the victim's brother, who was then 14 years old, related that

25  in the fall of 2010, the fugitive admitted he had "fucked up" because

26  of what he did to the victim.   (See id. at 73.)   When the victim's

27  brother asked what the fugitive meant, the fugitive said, "I kinda

28

4

1  raped your sister.  I wish you could punch me for what I did."  (See

2  id.)

3        4.    Medical Examination of the Victim

4        On March 28, 2011, a pediatrician conducted a medical

5  examination of the victim and determined that the examination was

6  normal and showed "no evidence of previous penetrating trauma."  (See

7  id.)  The pediatrician opined that a normal examination is not

8  inconsistent with sexual abuse.  (See id.)

9        5.    The Fugitive's E-mail

10       On June 15, 2011, the victim's mother forwarded to the police an

11  e-mail she received four days earlier from

12  banisolorzano@rocketmail.com, an e-mail account that she understood

13  that the fugitive used, with the subject line "Please read this."

14  (See id.)  The e-mail included the following passage:

15             [M]y father just told me this morning about you

16        informing the whole family about the incident that happen

17        [sic] last year. I'm not mad at you at all and I know I

18        probably deserve it or I might have not, but I don't want

19        to debate on this so I'll drop it. All I want to know is

20        why? I know i [sic] stuck you in the most delicate spot

21        ever and there are no words that can describe it. Not a day

22        goes by that I don't think about the pain I caused you so

23        deeply, seriously though, bullshit to the side.  I can't

24        make you keep your mouth shut about this because it's your

25        daughter, but I would like to ask you kindly to not talk

26        about it to no one. This only affects you and me more and

27        [the victim]. I have cause [sic] enough damage and now

28        since everyone knows, the pain will grow bigger. I know

5

1    what I put you through and I'm really sorry. There are days

2    when I just get in a mood that no one can stand me and

3    that's because I'm thinking of the pain I caused you. If

4    you were the type of person once [sic] can talk to freely I

5    would, but I see I can't.

6    (Id.)

7          6.    Identification of the Fugitive

8    On July 26, 2017, a detective from Edmonton Police Service

9    showed the victim a photograph of the fugitive that the police

10   obtained from Instagram.  (See id. at 74.)  The victim positively

11   identified the person in the photograph as her cousin, the fugitive.

12   (See id.)  A copy of this photograph is included as an exhibit to

13   Canada's extradition request.  (See id. at 76.)

14   III.  LEGAL FRAMEWORK AND ARGUMENT

15         A.    Applicable Law Concerning Extradition Hearings

16               1.    Sui Generis Nature of Extradition Proceedings

17   The extradition hearing prescribed by 18 U.S.C. § 3184 is unique

18   in nature.  See, e.g., Martin v. Warden, 993 F.2d 824, 828 (11th Cir.

19   1993); Jhirad v. Ferrandina, 536 F.2d 478, 482 (2d Cir. 1976).  As

20   described in Jhirad, an extradition hearing is sui generis, with its

21   structure and process defined by statute and treaty.  Jhirad, 536

22   F.2d at 482.  An extradition hearing is not a criminal proceeding;

23   its purpose is to decide the sufficiency of the charge under the

24   relevant treaty, not guilt or innocence.  Neely v. Henkel, 180 U.S.

25   109, 123 (1901); Benson v. McMahon, 127 U.S. 457, 463 (1888);

26   Afanasjev v. Hurlburt, 418 F.3d 1159, 1165 n.11 (11th Cir. 2005).

27   The limited nature of the hearing has resulted in special

28   procedural and evidentiary rules that apply.  For example, the person

1   whose extradition is sought is not entitled to the rights available

2   in a criminal trial.  See Neely, 180 U.S. at 122 (rights available to

3   one charged with criminal offense in this country not applicable to

4   offenses committed outside the United States against the laws of

5   another country); accord Charlton v. Kelly, 229 U.S. 447, 461 (1913);

6   Martin, 993 F.2d at 829.  The purpose of an extradition hearing under

7   Section 3184 is not to try the underlying charge; that is for the

8   foreign court.  See Neely, 180 U.S. at 123.

9           2.   General Standards and the Elements of Extradition

10       Extradition is primarily an executive responsibility with a

11  specially defined role for a judicial officer.  That judicial officer

12  is authorized by statute to determine whether to certify to the

13  Secretary of State that the evidence submitted by the country

14  requesting extradition is "sufficient to sustain the charge."  18

15  U.S.C. § 3184.  The Secretary of State, and not the Court, decides

16  whether the fugitive should be surrendered to the requesting country.

17  See 18 U.S.C. §§ 3184, 3186; Prasoprat v. Benov, 421 F.3d 1009, 1012

18  (9th Cir. 2005); Martin, 993 F.2d at 828; Lo Duca v. United States,

19  93 F.3d 1100, 1110 n.10 (2d Cir. 1996).

20       At the extradition hearing, the Court should consider the

21  evidence presented on behalf of the requesting country and determine

22  whether the legal requirements for certification, as defined in the

23  relevant treaty, statutes, and case law, have been established.  If

24  any explanatory evidence is offered by the fugitive (see infra), the

25  Court rules on its admissibility.  Once the evidentiary record is

26  complete, the extradition judge should make findings on each of the

27  elements for certification, including separate findings for each

28  offense as to which extradition is sought.  See Shapiro v.

1   <u>Ferrandina</u>, 478 F.2d 894 (2d Cir. 1973).  If the extradition

2   magistrate decides that the elements necessary for extradition are

3   present, he or she must issue a certificate of extraditability, which

4   is forwarded to the Department of State for disposition by the

5   Secretary of State.  See 18 U.S.C. § 3184.[2]

6       In order to issue a certificate of extraditability, the

7   extradition magistrate must find that: (1) the extradition magistrate

8   has jurisdiction to conduct extradition proceedings; (2) the

9   extradition magistrate has jurisdiction over the fugitive; (3) an

10  extradition treaty is in force; (4) the fugitive is being sought for

11  offenses for which the applicable treaty permits extradition; and (5)

12  there is sufficient evidence to establish that the individual

13  appearing in court is the fugitive who is charged and probable cause

14  to believe that the fugitive committed the offense for which

15  extradition is requested.  See <u>Manta v. Chertoff</u>, 518 F.3d 1134, 1140

16  (9th Cir. 2008); <u>Quinn v. Robinson</u>, 783 F.2d 776, 783, 790 (9th Cir.

17  1986); <u>Zanazanian v. United States</u>, 729 F.2d 624, 625-26 (9th Cir.

18  1984).

19      When interpreting an extradition treaty, the extradition

20  magistrate must construe its provisions liberally, in a manner

21  favoring the obligation to surrender fugitives.  See <u>Factor v.</u>

22  <u>Laubenheimer</u>, 290 U.S. 276, 293-94, 298, 303 (1933); <u>United States v.</u>

---

23          [2]  If the Court certifies the evidence to the Secretary of
24  State, the Court must commit the fugitive to the custody of the
    United States Marshal to await further determination by the Secretary
25  regarding surrender to the representatives of the requesting state.
    <u>See</u> 18 U.S.C. § 3184.  The Court should then forward, or have
26  forwarded, a certified copy of the certification and commitment order
27  to the Secretary of State, together with a copy of any evidence
    outside the formal extradition package and a transcript of any
28  testimony at the hearing.  <u>See</u> 18 U.S.C. § 3184; <u>Ordinola v. Hackman</u>,
    478 F.3d 588, 597 (4th Cir. 2007).

1  Wiebe, 733 F.2d 549, 554 (8th Cir. 1984); Cucuzzella v. Keliikoa, 638

2  F.2d 105, 107 n.3 (9th Cir. 1981) ("[T]reaties should be construed to

3  enlarge the rights of the parties").  Moreover, the obligation to

4  surrender the fugitive to be tried for her alleged offenses "should

5  be construed more liberally than a criminal statute or the technical

6  requirements of criminal procedure." Factor, 290 U.S. at 298.

7  Accordingly, "[f]orm is not to be insisted upon beyond the

8  requirements of safety and justice," Fernandez v. Phillips, 268 U.S.

9  311, 312 (1925), and objections that "savor of technicality" do not

10 find favor in court, Bingham v. Bradley, 241 U.S. 511, 517-18 (1916).

11              3.   Probable Cause Determination

12      The extradition magistrate is not authorized to determine

13 whether the evidence is sufficient to justify conviction, as that

14 determination will be made by the foreign court that handles the

15 case.  See Collins v. Loisel, 259 U.S. 309, 316 (1922); Quinn, 783

16 F.2d at 815; Valencia v. Limbs, 655 F.2d 195, 198 (9th Cir. 1981).

17 The extradition magistrate need only determine whether there is

18 probable cause to believe that the fugitive committed the offense or

19 offenses for which extradition is sought.  See Ornelas v. Ruiz, 161

20 U.S. 502, 512 (1896).

21      In the extradition context, the Ninth Circuit has explicated the

22 probable cause standard as asking "whether there was any evidence

23 warranting the finding that there was a reasonable ground to believe

24 the accused guilty." Mirchandani v. United States, 836 F.2d 1223,

25 1226 (9th Cir. 1988) (quoting Fernandez, 268 U.S. at 312); see also

26 United States ex rel. Sakaguchi v. Kaulukukui, 520 F.2d 726, 730-31

27 (9th Cir. 1975) ("magistrate's function is to determine whether there

28 is 'any' evidence sufficient to establish reasonable or probable

9

1  cause"). As to the form of the evidence, extradition is proper where

2  the standard is met if the proof "is presented[], even in somewhat

3  untechnical form according to our ideas." Glucksman v. Henkel, 221

4  U.S. 508, 512 (1911) (affirming extradition despite minor or

5  technical objections).

6             4.   Rules of Criminal Procedure and Evidence Do Not Apply

7       The Federal Rules of Criminal Procedure do not apply to

8  extradition proceedings. Rule 1(a)(5) states that the rules are not

9  applicable to the "extradition and rendition of a fugitive." The

10 Federal Rules of Evidence are also inapplicable.[3] An example of the

11 difference between a criminal trial and an extradition proceeding is

12 that, in the latter, hearsay is permitted. See Collins, 259 U.S. at

13 317; Mainero v. Gregg, 164 F.3d 1199, 1206 (9th Cir. 1999) ("it is

14 well settled in this circuit that evidence [in an extradition

15 proceeding] is not incompetent simply because it is hearsay"),

16 superseded by statute on other grounds, Pub. L. No. 105-277, § 2242,

17 1999 U.S.C.C.A.N. (112 Stat. 2681); Emami v. U.S. Dist. Court for

18

19 ─────────────────

20      [3]  Rule 1101(d)(3) provides: "The rules (other than with respect
   to privileges) do not apply . . . [to] proceedings for extradition or
   rendition." See also Afanasjev, 418 F.3d at 1164-65; Melia v. United
21 States, 667 F.2d 300 (2d Cir. 1981); Greci v. Birknes, 527 F.2d 956
   (1st Cir. 1976). Moreover, the fugitive has no right to discovery,
22 Prasoprat, 421 F.3d at 1014; Koskotas v. Roche, 931 F.2d 169, 175
   (1st Cir. 1991); Messina v. United States, 728 F.2d 77, 80 (2d Cir.
23 1984); there is no Sixth Amendment right to a speedy trial, Yapp v.
   Reno, 26 F.3d 1562, 1565 (11th Cir. 1994); Martin, 993 F.2d at 829;
24 Sabatier v. Dabrowski, 586 F.2d 866, 869 (1st Cir. 1978); the Fifth
   Amendment guarantee against double jeopardy does not apply to
25 successive extradition proceedings, Collins, 262 U.S. at 429; In re
   Extradition of McMullen, 989 F.2d 603, 612-13 (2d Cir. 1993); the
26 exclusionary rule is not applicable, Romeo v. Roache, 820 F.2d 540,
   545 (1st Cir. 1987); Simmons v. Braun, 627 F.2d 635, 636-37 (2d Cir.
27 1980); and the fugitive does not have the right to confront witnesses
   whose written statements are used against him, Bingham, 241 U.S. at
28 517.

                                      10

1   N. Dist., 834 F.2d 1444, 1451 (9th Cir. 1987) ("In the Ninth Circuit

2   it has been repeatedly held that hearsay evidence that would be

3   inadmissible for other purposes is admissible in extradition").[4]

4        Further, the calling of live witnesses is not contemplated at

5   extradition proceedings.  "An extradition proceeding is not a trial.

6   Indeed, the very purpose of extradition treaties is to obviate the

7   necessity of confronting the accused with the witnesses against him."

8   Mainero, 164 F.3d at 1207 (internal quotations and citation omitted);

9   see also Quinn, 783 F.2d at 815-16 ("[b]arring hearsay from

10  extradition proceedings would thwart one of the objectives of

11  bilateral extradition treaties").

12       5.   Limitations on Fugitive's Evidence

13       The fugitive's grounds for opposing an extradition request are

14  limited.  A fugitive may not introduce evidence that contradicts the

15  evidence submitted by the requesting country "[b]ecause extradition

16  courts do not weigh conflicting evidence in making their probable

17  cause determinations."  Barapind v. Enomoto, 400 F.3d 744, 749 (9th

18  Cir. 2005) (en banc) (internal quotation marks and citation omitted).

19  In other words, the fugitive cannot offer evidence that would lead to

20  an evidentiary dispute.  See Hooker v. Klein, 573 F.2d 1360, 1368

21  (9th Cir. 1978); Barapind, 400 F.3d at 749-50.  That is necessarily

22  so because the introduction of such evidence "would convert the

23  extradition into a full-scale trial, which it is not to be."  Eain v.

24

25       [4] Indeed, "[a] determination of probable cause in an extradition
    proceeding may rest entirely upon hearsay."  In re Ryan, 360 F. Supp.
26  270, 273 (E.D.N.Y. 1973), aff'd sub nom. In re Christensen, 478 F.2d
    1392 (2d Cir. 1973).  Documents offered in evidence at an extradition
27  hearing are admissible if they are certified by the principal
    diplomatic or consular officer of the United States resident in the
28  country requesting extradition, 18 U.S.C. § 3190, which is the case
    here.

                                   11

1   <u>Wilkes</u>, 641 F.2d 504, 511 (7th Cir. 1981); <u>see also</u> <u>Hooker</u>, 573 F.2d

2   at 1368 (a person fighting extradition is "not permitted to introduce

3   evidence on the issue of guilt or innocence"). A fugitive may

4   therefore only introduce evidence explaining the evidence submitted

5   in support of the extradition request. <u>See</u> <u>Barapind</u>, 400 F.3d at

6   749. Hence, the extradition magistrate does not weigh conflicting

7   evidence and determine what to credit, "but, rather, determines only

8   whether there is competent evidence to support the belief that the

9   accused has committed the charged offense." <u>Quinn</u>, 783 F.2d at 815.

10        It is also well settled that affirmative defenses to the merits

11   of the charge are not to be entertained in extradition hearings. <u>See</u>

12   <u>Charlton</u>, 229 U.S. at 462; <u>Collins</u>, 259 U.S. at 316-17; <u>Hooker</u>, 573

13   F.2d at 1368; <u>DeSilva v. DiLeonardi</u>, 125 F.3d 1110, 1112 (7th Cir.

14   1997). A fugitive may not introduce evidence that (1) merely

15   conflicts with the evidence submitted on behalf of the demanding

16   state, <u>Collins</u>, 259 U.S. at 315-17; (2) attempts to establish an

17   alibi, <u>Shapiro</u>, 478 F.2d at 901; (3) suggests an insanity defense,

18   <u>Charlton</u>, 229 U.S. at 462; (4) seeks to impeach the credibility of

19   the demanding country's witnesses, <u>Bovio v. United States</u>, 989 F.2d

20   255, 259 (7th Cir. 1993); or (5) seeks to establish a self-defense

21   argument, <u>United States v. Pena-Bencosme</u>, Case No. 05-M-1518, 2007 WL

22   3231978, at *7 (E.D.N.Y. Oct. 30, 2007). These issues, which require

23   factual and credibility determinations, are for the court in the

24   requesting country to resolve at a trial of the charges.

25             6.   The Rule of Non-Inquiry

26        All matters raised by the fugitive as a defense to extradition,

27   other than those related to the requirements for certification, are

28   to be considered by the Secretary of State, not by the Court. <u>See</u>

12

18 U.S.C. §§ 3184 & 3186.  For example, the Court should not look behind the extradition request into the motives of the requesting country.  As stated in In re Lincoln, 228 F. 70, 74 (E.D.N.Y. 1915):

> [I]t is not a part of the court proceedings nor of the hearing upon the charge of crime to exercise discretion as to whether the criminal charge is a cloak for political action, nor whether the request is made in good faith.  Such matters should be left to the Department of State.

Accord Quinn, 783 F.2d at 789; see also In re Extradition of Gonzalez, 217 F. Supp. 717, 722 n.15 (S.D.N.Y. 1963) (18 U.S.C. § 3184 gives court no authority to inquire into such matters).

In addition, the Court should not investigate the fairness of the requesting country's justice system.  United States v. Lui Kin-Hong, 110 F.3d 103, 110 (1st Cir. 1997).  It is the role of the Secretary of State, not judicial officers, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment the fugitive will likely receive on return to the requesting country.  Prasoprat, 421 F.3d at 1016.[5]

## B.   ELEMENTS FOR EXTRADITION ARE MET

In the instant case, the elements necessary for the Court to certify the fugitive's eligibility for extradition have been met. There is subject matter and personal jurisdiction over the fugitive.

---

[5]  See also Lopez-Smith v. Hood, 121 F.3d 1322, 1327 (9th Cir. 1997) (courts generally refrain from examining penal systems of requesting nations); Arnbjornsdottir-Mendler v. United States, 721 F.2d 679, 683 (9th Cir. 1983) ("The rationale is that such matters are to be determined solely by the executive branch"), superseded by statute on other grounds, Pub. L. No. 105-277, § 2242, 1999 U.S.C.C.A.N. (112 Stat. 2681).  As Justice Holmes said, "[w]e are bound by the existence of an extradition treaty to assume that the trial will be fair." Glucksman, 221 U.S. at 512.

A valid extradition treaty permits extradition for the offense charged in Canada.  And there is probable cause to believe that the fugitive committed that offense.

### 1.   There is Subject Matter Jurisdiction

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State."  18 U.S.C. § 3184.  Consequently, both magistrate judges and district judges may render a "certification" under Section 3184.  See Austin v. Healey, 5 F.3d 598, 601-02 (2d Cir. 1993) (magistrate had authorization to conduct extradition hearing without specific delegation of authority); Ward v. Rutherford, 921 F.2d 286, 287 (D.C. Cir. 1990) (both statute and local rule made plain magistrate's authority to conduct extradition hearing); Jimenez v. Aristeguieta, 311 F.2d 547, 553-55 (5th Cir. 1962) (any judicial officer in class authorized by statute may conduct extradition hearing).  Here, General Order 05-07 of the United States District Court for the Central District of California also delegates to magistrate judges the authority to handle extradition matters.  Accordingly, this Court is authorized to conduct this extradition proceeding.

### 2.   There is Personal Jurisdiction

A United States Magistrate Judge in the Central District of California has jurisdiction over the fugitive because he was "found" in this district when he was arrested on the extradition warrant at the Theo Lacey Detention Facility in Orange, California, which is in this district, on or about October 27, 2016.  See In re Extradition of Mainero, 990 F. Supp. 1208, 1216 (S.D. Cal. 1997).  When the

14

1   fugitive is "found within [this] jurisdiction," the personal

2   jurisdictional requirement of 18 U.S.C. § 3184 is met.

3            3.    <u>Extradition Treaty is in Force</u>

4       There is an extradition treaty in full force and effect between

5   the United States and Canada.   <u>See</u> 18 U.S.C. § 3181 (Historical and

6   Statutory Notes); <u>see also</u> Docket Nos. 1, Ex. 1 & 21 at 12-55

7   (Fennell Decl.).   The State Department's conclusion that the Treaty

8   is in full force and effect, as expressed in the Fennell Declaration,

9   is entitled to deference.   <u>See</u> <u>Then v. Melendez</u>, 92 F.3d 851, 853

10   (9th Cir. 1996); <u>Mainero</u>, 990 F. Supp. at 1216.

11            4.    <u>The Fugitive is Sought for Offenses</u>

12                <u>Covered by the Treaty</u>

13       Extradition treaties create an obligation for the United States

14   to surrender fugitives under the circumstances defined in the treaty.

15   Article 1 of the treaty applicable in this case provides for the

16   return of fugitives charged with or convicted of offenses covered by

17   Article 2, which, in turn, defines offenses as extraditable if the

18   criminal conduct is punished under the laws of both the United States

19   and Canada by imprisonment or other form of detention for a term

20   exceeding one year or any greater punishment.   Consequently, the

21   Court should examine the description of criminal conduct provided by

22   Canada in support of its request and decide whether that conduct

23   would have been criminal under U.S. law, if committed in this

24   country.   A requesting country is not obliged to produce evidence on

25   all elements of a criminal offense nor to establish that its crimes

26   are identical to ours.   <u>See</u> <u>Kelly v. Griffin</u>, 241 U.S. 6, 15 (1916).

27

28

1   The Supreme Court noted in <u>Collins v. Loisel</u>, 259 U.S. 309

2   (1922), that dual criminality is not a technical concept involving a

3   comparison of elements of the two countries' offenses:

4       The law does not require that the name by which the crime

5       is described in the two countries shall be the same; nor

6       that the scope of the liability shall be coextensive, or,

7       in other respects, the same in the two countries.  It is

8       enough if the particular act charged is criminal in both

9       jurisdictions.

10  259 U.S. at 312; <u>accord</u> <u>Gallo-Chamorro v. United States</u>, 233 F.3d

11  1298, 1307 (11th Cir. 2000), <u>cert. denied</u>, 516 U.S. 811 (1995);

12  <u>United States v. Saccoccia</u>, 58 F.3d 754, 766 (1st Cir. 1995), <u>cert.</u>

13  <u>denied</u>, 517 U.S. 1105 (1996).

14  Dual criminality is established if the conduct involved in the

15  foreign offense would be criminal under either United States federal

16  law, the law of the state in which the hearing is held, or the law of

17  a preponderance of the states.  <u>See</u> <u>Cucuzzella v. Keliikoa</u>, 638 F.2d

18  105, 107-08 (9th Cir. 1981).  The Court should "approach challenges

19  to extradition with a view toward finding the offense within the

20  treaty," <u>McElvy v. Civiletti</u>, 523 F. Supp. 42, 48 (S.D. Fla. 1981),

21  "because extradition treaties should be interpreted with a view to

22  fulfil our just obligations to other powers." <u>Grin v. Shine</u>, 187

23  U.S. 181, 184 (1902).  Foreign governments should not be expected to

24  be versed in our criminal laws and procedures.  <u>Id.</u> at 184-85.

25  Here, the dual criminality requirement is met because the crimes

26  for which the fugitive is charged are punishable in both Canada and

27  the United States for a period of more than one year.

28

In Canada, the maximum penalty for the crime of Sexual Interference, in violation of section 151 of the CCC, is 10 years of imprisonment. (See Docket No. 21 at 62 n.1.) The conduct underlying that charge would be punishable, if it had been committed here, as Lewd or Lascivious Acts, in violation of Section 288(a) of the California Penal Code, which carries a maximum penalty of eight years of imprisonment; and/or as Aggravated Sexual Abuse, in violation of Title 18, United States Code, Section 2241(c), which carries a maximum penalty of life imprisonment.

In Canada, the maximum penalty for the crime of Invitation to Sexual Touching, in violation of section 152 of the CCC, is 10 years of imprisonment. (See Docket No. 21 at 64.) The conduct underlying that charge would be punishable, if it had been committed here, as Lewd or Lascivious Acts, in violation of Section 288(a) of the California Penal Code, which carries a maximum penalty of eight years of imprisonment; and/or as Abusive Sexual Contact, in violation of Title 18, United States Code, Section 2244(a)(5), which carries a maximum penalty of life imprisonment.

Finally, in Canada, the maximum penalty for the crime of Sexual Assault, in violation of section 271 of the CCC, is 10 years of imprisonment. (See Docket No. 21 at 64.) The conduct underlying that charge would be punishable, if it had been committed here, as Rape, in violation of Sections 261(a) and 264 of the California Penal Code; Aggravated Sexual Assault of a Child, in violation of Section 269 of the California Penal Code; and/or Aggravated Sexual Abuse, in violation of Title 18, United States Code, Section 2241(c). Given the age of the victim, the maximum penalties would be 13 years of imprisonment (Rape) or life imprisonment (Aggravated Sexual

1   Assault of a Child and Aggravated Sexual Abuse).  <u>See</u> Cal. Penal Code

2   §§ 264(c)(1), 269(b); 18 U.S.C. § 2241(c).

3        Thus, the offenses for which the fugitive is sought are within

4   the scope of the Treaty.

5                  5.   <u>There is Probable Cause</u>

6        The standard of proof to find the evidence "sufficient to

7   sustain the charge . . ." pursuant to Section 3184 is the familiar

8   domestic requirement of probable cause.  The Court must conclude that

9   there is probable cause to believe that the crime charged by Canada

10  was committed and the person before the Court committed it.  <u>See</u>

11  <u>Hoxha v. Levi</u>, 465 F.3d 554, 561 (3d Cir. 2006).  The evidence is

12  sufficient, and probable cause is established, if "there was any

13  evidence warranting the finding that there was a reasonable ground to

14  believe the accused guilty."  <u>Mirchandani</u>, 836 F.2d at 1226.  The

15  Supreme Court stated in <u>Benson</u>, 127 U.S. at 463:

16        the proceeding before the commissioner is not to be regarded

17        as in the nature of a final trial by which the prisoner

18        could be convicted or acquitted of the crime charged against

19        him, but rather of the character of those preliminary

20        examinations which take place every day in this country

21        before an examining or committing magistrate for the purpose

22        of determining whether a case is made out which will justify

23        the holding of the accused, either by imprisonment or under

24        bail, to ultimately answer to an indictment, or other

25        proceeding, in which he shall be finally tried upon the

26        charge made against him.

27  <u>See also</u> <u>Collins</u>, 259 U.S. at 316 ("The function of the

28  committing magistrate is to determine whether there is competent

                                   18

1    evidence to justify holding the accused to await trial, and not

2    to determine whether the evidence is sufficient to justify a

3    conviction."); Fernandez, 268 U.S. at 312 ("Competent evidence to

4    establish reasonable grounds is not necessarily evidence

5    competent to convict."); accord Afanasjev, 418 F.3d at 1165 n.11;

6    Barapind, 400 F.3d at 752; Sidali v. INS, 107 F.3d 191, 199 (3d

7    Cir. 1997).

8          Here, the facts summarized above and set forth in the

9    extradition request submitted by Canada establish probable cause.

10                    a.   Summary of Facts Supporting Probable Cause

11         The United States relies on the totality of the evidence

12   provided by the Canadian authorities, which supports the arrest

13   warrant for the charged offense.   That evidence is detailed above.

14   However, a brief summary of the salient details is set forth below.

15         First, the victim's mother described to the police how she

16   learned that her nephew had sexually abused and assaulted her

17   daughter.   (See Docket No. 21 at 71-72.)   She also told the police

18   that when confronted about the illicit sexual activity with the

19   victim, the fugitive stated, "I messed up again."   (See id. at 72.)

20         Second, the victim described to the police how the fugitive

21   repeatedly sexually abused her, that he made her masturbate him, and

22   that the fugitive raped her.   (See id.)

23         Third, the victim's brother related to the police how the

24   fugitive had confessed to raping the 11-year old victim.   (See id.

25   at 73.)

26         Fourth, a medical examination of the victim did not rule out

27   sexual abuse.   (See id.)

28

Fifth, the fugitive sent an e-mail to his family in which he acknowledged that painful effect that his actions had on the victim and her family.  (See id.)

Sixth, the victim positively identified her abuser, the fugitive, from a photograph.  (See id. at 75.)

### b.   Elements of Offense Are Met

The documents provided by Canada establish that the fugitive committed the charged crimes.

#### (A)   Sexual Interference

To prove the crime of Sexual Interference, the Canadian prosecution must establish (i) a touching (direct or indirect) of the complainant's body with a part of the accused's body or an object; (ii) for a sexual purpose; and (iii) when the complainant was under sixteen years of age.  (See id. at 63.)

The extradition request contains a summary of the statements of the victim and the victim's mother that establish that the fugitive repeatedly used his finger to penetrate the victim's vagina.  (See id. at 71-72.)  The victim told the police that the fugitive touched her sexually.  (See id. at 72.)  Further, the extradition request states that the victim was 11 years old when the fugitive sexually abused and assaulted her.  (See id. at 66, 71, 73.)

Accordingly, there is probable cause that the elements are met for purposes of certifying extraditability for this charge.

#### (B)   Invitation of Sexual Touching

To prove this crime, the Canadian prosecution must establish (1) that the accused invited the complainant to touch the body of the accused of any other person (including the complainant); (ii) that the accused invited the complainant to use a part of the

20

1   complainant's body, or an object to accomplish this touching; (iii)

2   that the invitation was for a sexual purpose; and (iv) that the

3   complainant was under age sixteen at the time of the offence.  (See

4   id. at 64.)

5       The extradition request contains a summary of the statements of

6   the victim and the victim's mother that the fugitive took the

7   victim's hand, placed it on his penis, and had her move her hand up

8   and down.  (See id. at 71-72.)  There is no other reason than for a

9   sexual purpose for the fugitive's actions.  Also, the extradition

10  request states that the victim was 11-years old when the fugitive

11  sexually abused and assaulted her.  (See id. at 66, 71, 73.)

12      Accordingly, there is probable cause that the elements are met

13  for purposes of certifying extraditability for this charge.

14                      (C)    Sexual Assault

15      To prove this crime, the Canadian prosecution must establish

16  (i) an intentional application of force (including any degree of

17  touching); (ii) without consent; (iii) in circumstances such that the

18  sexual integrity of the victim was violated.  (See id. at 65.)

19      The extradition request contains a summary of the statements of

20  the victim and the victim's mother that the fugitive put his penis

21  inside the victim's vagina.  (See id. at 71-72.)  It is implied that

22  such conduct required the intentional application of force.  In fact,

23  the fugitive described what he did to the victim as "rape."  (See id.

24  at 73.)  Because the age of consent in Canada is 16 years of age, and

25  the victim was 11 years old at the relevant time, she could not have

26  consented.  (See id.)  Finally, by placing his penis in the victim's

27  vagina, the fugitive violated the victim's sexual integrity.

28

                                    21

1   Accordingly, there is probable cause that the elements are met

2   for purposes of certifying extraditability for this charge.

3           *c.*    *The Individual Appearing Before the Court is the*

4           *Fugitive*

5   The person before this Court is the person named in the Canadian

6   arrest warrant for these offenses.   The fugitive admitted his true

7   name as charged as an alias at his initial appearance on

8   October 27, 2017, before Chief Magistrate Judge Walsh.   (See Docket

9   No. 8.)   He never has denied that he is the person named in the

10  extradition request.   Moreover, counsel for the fugitive did not

11  contest the identity of the fugitive as being the person charged.   In

12  addition, the photograph of the fugitive, which the victim

13  identified, strongly resembles the person who has appeared before the

14  Court.

15  **IV.   CONCLUSION**

16  For the foregoing reasons, the United States requests the

17  certification of fugitive BANI SOLORZANO's extraditability to Canada

18  on all of the offenses for which his extradition has been sought.